Pearsox, J.
 

 Eohert Hairston died in March, 1852, intestate, leaving him surviving, his widow, Ruth, and his brothers and the children of deceased brothers and sisters, who are his next of kin. At September term, 1852, of the Court of Pleas and Quarter Sessions, for the county of Stokes, the widow Ruth was appointed administrat i c of the said Robert.
 

 The bill is filed by some of the next of kin against the ad-ministratrix and the other next of kin, for an account and settlement of the estate.
 

 
 *124
 
 Among other tilings, the hill charges that
 
 Peter Hairston
 
 died in 1832, leaving a last will and testament by which he bequeathed to his daughter Ruth, who was the wdfe of the intestate Robert, several valuable plantations in the county of Stokes, and also some seven or eight hundred slaves, together with much valuable stock, &c., upon the several plantations; that Robert Hairston took possession of these plantations, the ffiaves, stock, &c., and received and enjoyed the profits thereof: that about the year 1841, the said Robert went to the State of Mississippi, settled a plantation, and remained there most of his time, but without intending, or in fact changing his domicil, which was in the State of Virginia: that between the years 1841 and 1852, the profits of the plantations, slaves, &c., in the county of Stokes, were received by his brother, Samuel Hairston for, and on account of, the said Robert, and after his death w'ere paid over to the defendant Ruth, as his administratrix.
 

 The plaintiffs insist that the said slaves, stock, &c., bequeathed to the defendant, Ruth, by her father, Peter Hair-ston, were reduced into possession by Robert Hairston, and became his property
 
 jwre ma/riM,
 
 and form a part of his estate, to be accounted for by the defendant Ruth, his administratrix.
 

 They also insist that the profits of the plantations in Stokes county, between the years ÍS41 and 1852, which were received by Samuel Hairston for, and on account of, Robert Hairston, and paid over to the defendant Ruth, after the death of the said Robert, form a part of his estate to be accounted for by the defendant, Ruth, his administratrix.
 

 The answers admit the devise and bequest of Peter Hair-ston, but the defendant Ruth alleges that she is entitled to the ■ slaves, stock, &c., in her own right, because the legacy to her was a
 
 ohose in action,
 
 which her husband had not reduced’ into possession.
 

 She also, on the same ground, insists that she is entitled, in, her own right, to the profits of the plantations, slaves, &c., from 1841 to 1852, and is not liable to account therefor as ad-ministratrix.
 

 
 *125
 
 In support of lier claim, she alleges that her father, by his will, appointed herself, her husband, Agnes Hairston and Samuel Hairston, his executors, and the will was duly admitted to probate; but no one of the executors qualified; on the contrary, they all declined doing so, and they all
 
 resided beyond the limits of this State,
 
 so that they could not, according to 'law, qualify, and take out letters testamentary, without giving
 
 bond and security.
 
 So she insists that her husband had not reduced the legacy, given to her by her father’s will, into possession, and that she, as administratrix, is not liable to account therefor, or for the profits thereof, which, being an incident., must follow the principal: that after the death of her husband, she gave the
 
 bond and security
 
 required by law.) and qualified as the executrix of her father’s will, and then assented to the legacy, which she now claims to hold in her own right.
 

 The bill, by way of anticipation, admits that the executors of Peter Hairston were all non-residents, and avers that they caused the will to be duly proven, and “ agreed, among themselves, that as the estate was not at all in debt, and they were the principal legatees, it was useless to take out letters testamentary, and the devisees and legatees, under the will, should take possession of their respective estates, and have, hold, possess and enjoy the same, in as full and ample a manner as if letters testamentary had been taken out.”
 

 The defendant, Ruth Hairston, is the administratrix, and the plaintiffs and the other defendants are the next of kin, so, a decretal order for an account is a matter of course. It is held,
 
 Dozier
 
 v.
 
 Sprouse,
 
 1 Jones’ Eq. 154, that when, from the
 
 ■relation
 
 of the parties, a decree for an account is a matter of course, the rule is, “ a matter of charge,
 
 i. e.
 
 what does or does not form a part of the fund, .or of discharge, cannot be gone into at this stage of the proceeding, and comes up regularly by exception to the report of the master.”
 

 In that case the plaintiff had no counsel in Court, and although the defendant’s counsel urged for a declaration of the facts and of the opinion of the Court thereon, upon a matter
 
 *126
 
 that the hill alleged properly formed a part of the fund, because such previous declaration would save much trouble before the master, yet the Court refused to make any declaration as to the fact, or to give any opinion as to the law— acting upon the rule stated above.
 

 In this case both parties have counsel in this Court, and the counsel on both sides ask for a decision of the two - questions set out, not only because it may save much trouble before the master, but because it may stop all further litigation, as the parties may come to an understanding in regard to the oilier matters.
 

 Yielding to these suggestions, we heard full arguments upon the first point and will now decide it.
 

 ’Without saying whether an executor, resident in this State, can assent to a legacy, so as to vest the title in the legatee before he qualifies as executor, or, what legal effect can be given to the assent of an executor who dies before he qualifies, the question before us is settled by the fact that all of the executors were non-residents, and no one of them gave tile bond required by law, or qualified in the lifetime of the-intestate Robert Hairston, so that there was not, and could not be, an assent to the legacy of the wife, in the lifetime of her husband.
 

 Rev. Statutes, ch. 46, sec. 6. — An executor residing out of this State is required to give bond and security, &c.,
 
 “ and until the said executor shall enter into such bond, he shall have no power or authority to intermeddle with the
 
 estate, and the Court shall proceed to grant letters of administration with the will annexed; to continue in force until the executor shall enter into bond as aforesaid,” which he must do within one year after the death of the testator.
 

 For the want of an assent, which no one of these executors had “power or authority” to give, being all non-residents, the legal title to the slaves, stock,
 
 &c.,
 
 did not vest in the intestate Robert Hairston, and it became vested in his widow Ruth Hairston, in her own right, after the death of her husband, when she qualified as the executrix of her father and then assented to the legacy.
 

 
 *127
 

 Mr. Morehead,
 
 for the plaintiffs, insisted, that admitting there was not, and could not he, an assent, under the circumstances, in the lifetime of the intestate, still the intestate did
 
 in fact
 
 reduce the property into possession, and in this way, as between himself and his wife, the property became his
 
 jure mariti.
 

 The rule that in order to vest the property in the husband
 
 jure
 
 mariti, he must reduce the wife’s
 
 ehoses in aetion
 
 into possession, does not mean merely that he should get hold of the property and have it
 
 de facto
 
 in his possession ; but that he should convert what was before a
 
 chose in action
 
 into a
 
 chose
 
 (or thing)
 
 in possession,
 
 by acquiring the legal title, and putting an end to all further ground of controversy, so as to make it a thing in possession; and then the law vests it in him as husband.
 

 The fact, that a hifsband by taking actual seizin of land, is entitled after the death of the wife, as against her heirs, to an estate as tenant by the curtesy, notwithstanding the title may be in a third person, has no bearing upon the question. The law in regard to curtesy is derived from the feudal system; the law as to a husband’s rights in his wife’s ehoses in possession and her ehoses in action is derived from the civil law: so the sources are different; and it is well settled that in the event of the wife’s surviving, she is entitled to all her ehoses in action, which her husband had not, during the coverture, reduced into a chose in possession, which purpose is not effected by his taking possession
 
 de facto.
 
 In our case, the wife had a chose in action, to wit, the legacy; the title of the property was in the executors, and it remained there, until after the death of the husband ; so he did not, within the meaning of the rule,
 
 “
 
 reduce the chose in action into possession,” and his wife, surviving him, is entitled, in her own right, to the slaves, stock, &e.
 

 The second question, in regard to the profits of the plant1 ation, slaves, &c., from 1841 to 1852, was not fully argued ; for Mr.
 
 Morehead
 
 and Mr.
 
 Badger
 
 directed their arguments almost entirely to the first question, as the great and absorb
 
 *128
 
 ing matter; for this reason, we will not decide the second question until it comes up by exception to the master’s report. It may he well to say however, that we incline to the opinion, that Robert Hairston was entitled to those profits which were received, for and on his account, by Samuel Hairston, acting as his agent. On the one hand it is said, the profits must go with the property as an incident follows the principal; but on the other it is said, that as to the profits of the land, the husband was clearly entitled, and the wife, in respect thereto, can set up no claim; and the profits of the slaves, stock, &c., were so mixed up and confounded with those derived from the land, that a separation is impossible; and that although the husband may not have acquired the legal title, so as to exclude the wife’s right to the property itself, not having reduced the wife’s choses in action into possession, yet, the profits being actually received by him are to be looked on as
 
 fndt fallen,
 
 or rent accrued' upon a term of years, which passes to the wife as survivor, but the rent accrued belongs to the husband. There is much force in this view of the subject.
 

 There must be a decree for an account, with a declaration of opinion, that the slaves, stock, &c., do not constitute a part of the estate of the intestate.
 

 Per Curiaji. Decree accordingly.